# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Charles William Carter,
    Petitioner

      vs.                          Case No. 1:03cv901
                                     (Dlott, J.; Black, M.J.)

Michael Sheets,[1]
    Respondent

---

# REPORT AND RECOMMENDATION

---

     Petitioner, an inmate in state custody at the Ross Correctional Institution in Chillicothe, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition; respondent's "Answer/Return of Writ" and accompanying exhibits; petitioner's reply to the return of writ, as well as additional pleadings filed by him that were allowed by the Court; and transcripts of proceedings held before the state trial court, which were manually filed by respondent.  (Docs. 1, 10, 13, 17, 18, 20).

---

   [1]  In the petition, petitioner properly named as respondent Anthony Brigano, who was then Warden of Lebanon Correctional Institution, where petitioner was incarcerated.  However, since that time, petitioner was transferred to the Ross Correctional Institution, where Michael Sheets is the current Warden.  (*See* Docs. 7, 8).  Because Michael Sheets is the individual who apparently now has custody of petitioner, the caption of this case is hereby changed to reflect the proper party respondent.  *See* Rule 2, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.

## Procedural Background

On June 15, 2001, petitioner was indicted by the grand jury of Clinton County, Ohio, on one count of aggravated burglary as defined in Ohio Rev. Code § 2911.11(A)(1) (Count One), one count of rape as defined in Ohio Rev. Code § 2907.02(A)(2) (Count Two), one count of kidnapping as defined in Ohio Rev. Code § 2905.01(A)(4) (Count Three), and one count of possession of criminal tools as defined in Ohio Rev. Code § 2923.24 (Count Four).  (Doc. 10, Ex. 1).

With the assistance of counsel, petitioner filed a motion to suppress any statements made by him during his custodial interrogation by law enforcement officials.  (*Id.,* Ex. 2).  After a hearing held on October 31, 2001, the trial court overruled this motion, but allowed petitioner to file a second motion to suppress "dealing with a separate issue involving the authority [of a Clinton County police detective] to detain [petitioner] outside the jurisdiction of the city of Wilmington, Ohio."  (*Id.,* Ex. 3).

On November 7, 2001, petitioner filed a second motion to suppress all statements made by him and evidence seized as a result of his illegal arrest, which he claimed was made "without probable cause and without any judicial authority." (*Id.,* Ex. 4).  After a hearing held on November 14, 2001, the trial court overruled the motion.  (*Id.,* Ex. 5).  In so ruling, the court found that although petitioner's "stop, detention, [and] seizure [in Highland County, Ohio] and return to Clinton County" as a suspect "for a serious criminal offense" may have violated certain state statutory procedures, petitioner's constitutional rights had not been infringed. (*Id.*).

Thereafter, on January 17, 2002, petitioner entered a no contest plea and was convicted on all four counts of the indictment. (*Id.*, Exs. 6, 7).  On February 20, 2002, petitioner was adjudicated to be a "sexual predator" and was sentenced to consecutive terms of imprisonment of five years for the aggravated burglary offense charged in Count One; ten years, with a mandatory five year prison term, for the rape offense charged in Count Two;  and five years for the kidnapping offense charged in Count Three.  (*Id.*, Exs. 8, 9).  Petitioner was also sentenced to a concurrent prison term of eleven months for the possession of criminal tools offense charged in Count Four.  (*Id.,* Ex. 8).

With the assistance of his trial counsel, petitioner filed a timely appeal to the Ohio Court of Appeals, Twelfth Appellate District, raising the following assignments of error:

> 1.  The trial court erred and violated appellant's Fourth Amendment rights when it refused to order appellant's statements suppressed, because the evidence showed that those statements were involuntary.
>
> 2.  The trial court erred in failing to sustain the suppression motion because the State failed to meet its burden of proving that the officer who issued the dispatch had a reasonable basis on which to suspect appellant of an offense.
>
> 3.  The trial court erred in finding that appellant was a sexual predator.
>
> 4.  The trial court violated the Double Jeopardy Clause of the Ohio and U.S. Constitutions when it sentenced appellant for rape and kidnapping, when the object of the offenses was the same and when the offenses were committed with the same animus.

(*Id.,* Ex. 10).

On November 12, 2002, the Ohio Court of Appeals issued an Opinion and Judgment Entry overruling petitioner's assignments of error and affirming the trial court's judgment.  (*Id.,* Ex. 12).  In its opinion, the court made findings of fact, which are presumed correct under 28 U.S.C. § 2254(e)(1),[2] regarding the incident that resulted in petitioner's conviction and sentence:

> Appellant and K.S. were co-workers at Lowe's in Wilmington. Appellant wanted a romantic relationship with K.S.  However, K.S.

---

[2]  28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."  Petitioner has neither cited nor presented any evidence to rebut the Ohio court's factual findings quoted herein. Therefore, petitioner has not demonstrated by clear and convincing evidence that such findings are erroneous.

3

declined appellant's advances.

On June 12, 2001, appellant broke into K.S.'s apartment while she was sleeping in her bed. K.S. was awakened to find a masked person standing next to her. K.S. began to scream so appellant put a pillow over her face to muffle the sound. Appellant then handcuffed K.S.'s hands to the headboard of the bed. Appellant then placed a latex glove into K.S.'s mouth to keep her from screaming. K.S. began choking on the glove but was eventually able to remove it from her mouth. Appellant then stuffed a sock into her mouth and placed duct tape over K.S.'s mouth and eyes. Once K.S. could not see, scream, or move her arms, appellant proceeded to undress and rape her.

During the rape, K.S. was able to free the duct tape from her mouth. She then asked appellant to unlock the handcuffs. Appellant removed the handcuffs from K.S.'s hands. Once K.S. was released she ran from the apartment. K.S. then noticed the masked man leaving her apartment. She ran after her assailant and was able to remove the mask. Once the mask was removed, K.S. recognized her assailant as appellant, her co-worker.

K.S. called 9-1-1 to report the rape. K.S. gave the operator a description of appellant, his car, and informed the operator where appellant lived. Dispatch transmitted a "be on the lookout" ("BOLO") for a possible rape suspect giving appellant's description and license plate number.

Ohio State Highway Patrol Trooper Gary Heaton spotted appellant's vehicle in Highland County with only one operable headlight. Trooper Heaton stopped appellant for the headlight violation. Trooper Heaton then verified that the license plate matched that of the BOLO. Appellant was detained for questioning. Trooper Heaton performed a pat-down search of appellant for safety purposes and the search revealed a pocketknife.

Detective Duane Weyand of the Wilmington Police Department arrived to transport appellant to Clinton County for questioning in connection with the reported rape. Det. Weyand performed a pat-down

4

search of appellant before placing him in the cruiser. Det. Weyand removed handcuffs and latex gloves from appellant's pockets. Det. Weyand then read appellant his *Miranda* rights in the vehicle on the way to the Wilmington Police Department. During the drive, appellant and Det. Weyand had a conversation about the rape. At the Wilmington Police Department, appellant signed a *Miranda* waiver form and was interviewed. According to appellant, during the interview he asked the officers what he could be charged with and the officers replied "some form of sex without consent."

(*Id.,* pp. 1-3).

Proceeding *pro se,* petitioner timely appealed the Ohio Court of Appeals' decision to the Supreme Court of Ohio, raising as propositions of law the same claims of error that had been presented on direct appeal. (*See id.,* Ex. 13). On March 19, 2003, the Supreme Court of Ohio declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 15).

In the meantime, on February 4, 2003, while his appeal from the Ohio Court of Appeals' direct appeal decision was pending before the Supreme Court of Ohio, petitioner filed a timely application to reopen his appeal pursuant to Ohio R. App. P. 26(B) with the Ohio Court of Appeals, Twelfth Appellate District. (*Id.,* Ex. 18). In the application, petitioner alleged his appellate counsel was ineffective because he "failed to enter transcripts into record for appeal" and failed to raise the following claims as assignments of error on direct appeal: (1) "[t]he trial court err[ed] by not suppressing appellant's statements and ev[i]dence when evidence showed appellant'[s] arrest was unconstitutional;" (2) "[t]he trial court err[ed] in allowing Albert Lakes['] letter into ev[i]dence without allowing defen[s]e to question Mr. Lakes;" (3) "[t]he court err[ed] when the court sentenced appellant to max[i]mum and consecutive sentences contrary to law;" and (4) "[a]ppellant request[s] leave to appeal consecutive sentences incorporated into appeal as of right in accordance with Appellate Rule 5(C)(2)." (*Id.,* Ex. 15).

The Ohio Court of Appeals denied petitioner's application for reopening on May 7, 2003. (*Id.*, Brief, p. 5; Ex. 20). Petitioner filed two motions for reconsideration, which were summarily denied by the Court of Appeals in an Entry issued June 11, 2003. (*Id.,* Exs. 22-24).

5

In the return of writ, respondent states that petitioner did not appeal the denial of his application for reopening to the Supreme Court of Ohio.  (*Id.,* Brief, p. 6).  However, petitioner has submitted evidence indicating that he did attempt an appeal to the Supreme Court of Ohio.  Specifically, it appears that petitioner submitted a memorandum in support of jurisdiction, which was stamped as "received" by the Clerk's Office on June 17, 2003.  (*See* Doc. 17, Ex. F).  The memorandum and an accompanying affidavit were returned to petitioner by the Clerk's Office by letter issued the same date, which provided in pertinent part:

> The enclosed documents could not be filed because they do not comply with the Rules of Practice of the Supreme Court of Ohio.  Specifically:
>
> > 1.  The Memorandum in Support of Jurisdiction exceeds the 15-page limit imposed by Rule III, Section 1(C).  Pages number I through VI must be counted toward the page count, bringing your total to 18 pages.
> >
> > 2.  The Affidavit of Charles William Carter cannot be filed because memoranda in support of jurisdiction may not be supplemented.  See Rule III, Section 3(A).  Please note that, if the affidavit were attached to or made a part of the memorandum, it would also be included in the memorandum's page count.
>
> Your notice of appeal, affidavit of indigency, and corrected memorandum in support of jurisdiction may be resubmitted to the Clerk's Office.  However, the return of documents for noncompliance with the Rules of Practice does not stay the time for filing.  If you are appealing a May 7, 2003 court of appeals decision, **your documents must be received in the Clerk's Office before 5 p.m., June 23, 2003**.

(*See* Doc. 1, attached letter dated June 17, 2003) (emphasis in original).

Petitioner avers that he did not receive the letter from the Clerk's Office until June 24, 2003.  (Doc. 17, Brief, p. 3).  He states that he resubmitted a corrected memorandum in support of jurisdiction, with a motion to accept the delayed filing.  (*Id.*).  The memorandum, which was stamped as "received" by the Clerk's Office on June 30, 2003 (*see id.,* Ex. F), was returned to petitioner by the Clerk's Office  by

6

letter issued the same date, which letter provided:

> The enclosed documents are being returned to you because the
> materials necessary to perfect your appeal were not received within the
> 45-day time period prescribed by Rule II, Section 2(A)(1).  The
> Clerk's Office is prohibited from filing both documents that are not
> received on time and those seeking to waive the timeliness requirement
> for an appeal in a manner not permitted by Rule II, Section 2(A)(4).
> See also Rule XIV, Section 1(C).
>
> Please note the provisions under Rule II, Section 2(A)(4)(b) for filing a
> motion for delayed appeal apply to appeals from a felony conviction
> and do not apply to appeals involving postconviction relief, including
> appeals brought pursuant to *State v. Murnahan* (1992), 63 Ohio St. 3d
> 60 and App. R. 26(B).  Therefore, even though the underlying appeal is
> criminal in nature, the provisions for filing a motion for delayed appeal
> do not apply.

(Doc. 1, attached letter dated June 30, 2003).

Petitioner initiated the instant federal habeas corpus action on December 22,
2003.  (*See* Doc. 1).  He alleges eleven grounds for relief, which are summarized as
follows:

> **Grounds One and Two:**  The trial court erred in violation of
> petitioner's rights under the Fourth and Fourteenth Amendments when
> it overruled petitioner's motion to suppress evidence obtained after his
> unlawful arrest without "a warrant, probable cause or a sworn
> complaint" outside the arresting officer's jurisdiction.
>
> **Ground Three:**  The trial court erred in violation of petitioner's Fifth
> Amendment rights when it overruled petitioner's motion to suppress
> statements made by him to the police, which petitioner claims were
> "coerced" by the arresting officer.
>
> **Ground Four:**  Petitioner was denied due process when the trial court
> imposed consecutive sentences "unsupported by findings required by
> statute" in Ohio.

**Ground Five:**  Petitioner was denied due process when, in violation of Ohio law, the trial court sentenced him to a mandatory five-year sentence for the rape offense and failed to "state why [he was] being sentenced to more than the shortest prison term for a first time offender."

**Ground Six:**  Petitioner was denied due process when the Ohio Court of Appeals denied his application for reopening of the appeal without addressing a claim of error that had been raised by him regarding his right to appellate review of his sentence.

**Ground Seven:**  Petitioner's rights under the Fifth Amendment's Double Jeopardy Clause were violated when petitioner was sentenced to consecutive terms of imprisonment on the "allied offense" charges of rape and kidnapping, which were not committed with a "separate animus."

**Ground Eight:**  Petitioner's equal protection rights were violated when a Clinton County police officer, "impersonating" a Highland County officer, arrested petitioner in Highland County, outside the officer's jurisdiction.

**Ground Nine:**  Petitioner's equal protection rights were violated when he was "false[ly] arrest[ed]" by a police officer who "did not have a warrant or jurisdiction" to arrest him.

**Ground Ten:**  Petitioner's equal protection rights were violated when he was unlawfully "abducted" from Highland County, the place of his arrest, to the Clinton County police department located 35 miles away in Wilmington, Ohio.

**Ground Eleven:** Petitioner's equal protection rights were violated when the arresting officer committed the "theft" offense of having petitioner's truck towed and impounded.

(*Id.,* "Computer Generated Petition," pp. 5-22).

In the return of writ, respondent does not argue, nor does the record reflect,

8

that the petition is barred from review on statute of limitations grounds.  Moreover, it appears that the petition does not trigger any exhaustion concerns.  Therefore, the Court will proceed to address each of petitioner's grounds for relief in light of respondent's arguments that are asserted as defenses in the return of writ.

## OPINION

### A.  Petitioner Has Waived The Claims Alleged In Grounds Four Through Six And Eight Through Eleven, Which He Did Not Raise On Direct Appeal

In Grounds Four and Five of the petition, petitioner contends he was denied due process when he was sentenced in violation of certain state statutory provisions governing sentencing.  In Ground Six, petitioner claims he was denied due process when the Ohio Court of Appeals failed to address one of the assignments of error that he had raised in his application to reopen his appeal.  In Grounds Eight through Eleven of the petition, petitioner asserts various arguments in support of the general claim that the arresting officer's conduct in this case violated the Fourteenth Amendment's Equal Protection Clause.  In the return of writ, respondent argues that petitioner has waived these claims because he failed to present them to the Ohio courts on direct appeal.  (Doc. 10, Brief, p. 7, 9-12).  Respondent's argument has merit.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default to preclude review of the merits of his claims by the state's highest court,

and if no avenue of relief remains open, or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

If, because of a procedural default, petitioner has not had his claims considered by the state's highest court on the merits, and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review, unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner, who has exhausted all available state remedies with respect to the claims alleged in Grounds Four through Six and Eight through Eleven of the petition, committed a procedural default by failing to present those claims to the state courts for their consideration in the state direct appeal proceedings. Because petitioner did not provide the Ohio appellate courts with an opportunity to correct the alleged errors on direct appeal, he has waived the claims for purposes of federal habeas corpus review, unless he shows cause for the default and actual prejudice as a result of the alleged errors or demonstrates that failure to consider the claims will result in a "fundamental miscarriage of justice." *See Leroy,* 757 F.2d at 97, 99-100; *see also Coleman,* 501 U.S. at 750; *Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has not demonstrated that a "fundamental miscarriage of justice" will occur if his procedurally-defaulted claims are not considered by this Court. *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995).

Petitioner alleged in his application for reopening of his appeal that his appellate counsel was ineffective in failing to present some of these claims as assignments of error on direct appeal. (*See* Doc. 10, Ex. 15). Ineffective assistance of counsel can "supply the cause that, together with prejudice, would excuse a procedural default," as long as the ineffective assistance of counsel claim also was not procedurally defaulted by petitioner in the state courts. *See Richey v. Mitchell,*

10

395 F.3d 660, 679 (6th Cir.) (quoting *McFarland v. Yukins,* 356 F.3d 688, 699 (6th Cir. 2004)), *rev'd on other grounds,* 126 S.Ct. 602 (2005) (per curiam); *see also Edwards v. Carpenter,* 529 U.S. 446, 452 (2000); *Murray,* 477 U.S. at 488.

Here, however, petitioner procedurally defaulted his ineffective assistance of appellate counsel claim in the state courts by failing to perfect a timely appeal to the Supreme Court of Ohio from the denial of his reopening application. Although he attempted to do so, the clerk of the state supreme court refused to file petitioner's initial timely-submitted pleadings based on his failure to comply with the court's procedural rules governing the page limit for memoranda in support of jurisdiction and the submission of supplemental affidavits. (*See* Doc. 1, attached letter dated June 17, 2003). Moreover, the clerk of the state supreme court later refused to file petitioner's corrected pleadings because they were submitted after the 45-day appeal period had expired, and delayed appeals from the denial of reopening applications are not allowed under the court's procedural rules. (*See id.,* attached letter dated June 30, 2003).

The clerk's rejection of petitioner's pleadings for filing was justified given petitioner's non-compliance with explicit procedural filing requirements set forth in the Rules of Practice of the Supreme Court of Ohio.

Petitioner nevertheless argues that "cause" exists for his procedural default because he did not receive the clerk's June 17, 2003 letter rejecting his initial timely-submitted pleadings until seven days later, after the 45-day appeal period had expired. Petitioner contends that the seven-day delay in the mailing process, which he claims was excessive and unusual, precluded him from effectuating a timely appeal. This Court disagrees.

The seven-day lapse in time between the clerk's receipt of petitioner's initial submissions and their return to petitioner based on his non-compliance with certain filing requirements was neither inordinate nor unreasonable. Petitioner was unable to perfect a timely appeal to the Supreme Court of Ohio not because of the minimal delay in the mailing process, which commonly occurs, but because he waited until six days before the 45-day appeal period was due to expire to submit his initial pleadings for filing and failed to ensure that these pleadings submitted so close to the deadline date complied with the filing requirements set forth in the Rules of Practice of the Supreme Court of Ohio. Because petitioner thus procedurally defaulted his ineffective assistance of appellate counsel claim in the state courts, he is unable to establish that his appellate counsel's ineffectiveness constitutes "cause"

11

for his failure to present the claims alleged in Grounds Four through Six and Eight through Eleven of the petition to the Ohio courts on direct appeal.

Accordingly, in sum, in the absence of a showing of "cause" or that a "fundamental miscarriage of justice" will occur, the Court concludes that petitioner has waived the claims alleged in Grounds Four through Six and Eight through Eleven of the petition.

### B. Petitioner Is Not Entitled To Relief Based On The Fourth Amendment Claim Alleged In Grounds One And Two Challenging The Denial Of His Motion To Suppress Evidence Seized After His Unlawful Arrest

In Grounds One and Two of the petition, petitioner essentially claims that the trial court committed constitutional error when it overruled his motion to suppress evidence obtained from him upon his unlawful arrest without a warrant or probable cause and outside the arresting officer's jurisdiction, in violation of the Fourth Amendment's protection against unreasonable searches and seizures.  (Doc. 1, "Computer Generated Petition," pp. 5-6, 7-9).  Respondent contends in the return of writ that the Supreme Court's decision in *Stone v. Powell,* 428 U.S. 465, 494-95 (1976), precludes federal habeas review of these grounds for relief.

As respondent has argued, federal habeas courts are prohibited from addressing the merits of Fourth Amendment claims brought by state prisoners if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the State's corrective process.  *Stone,* 428 U.S. at 494-95.

To determine whether the petitioner's claim is subject to review, a federal habeas corpus court must make two distinct inquiries: (1) whether the State has provided a procedural mechanism through which, in the abstract, petitioner could raise a Fourth Amendment claim; and (2) whether petitioner's presentation of the claim was in fact frustrated because of a failure of that mechanism.  *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir.), *cert. denied*, 459 U.S. 948 (1982); *see also Machacek v. Ohio,* 213 F.3d 947, 952 (6th Cir. 2000), *cert. denied,* 531 U.S. 1089 (2001).

Ohio provides an adequate procedural mechanism for the litigation of Fourth Amendment claims in the form of a pretrial motion to suppress pursuant to Ohio R.

Crim. P. 12, and a direct appeal as of right from an order denying a motion to suppress pursuant to Ohio R. App. P. 3 and 5. Discretionary review by the Supreme Court of Ohio is not an additional requirement for ensuring full and fair litigation of a Fourth Amendment claim in Ohio. Therefore, under the first inquiry, Ohio's mechanism for the resolution of Fourth Amendment claims, in the abstract, presents the opportunity to raise such claims. *Id.*

Under the second inquiry, petitioner has not shown that there was a failure of the State's procedural mechanism which frustrated the presentation of his Fourth Amendment claim in the Ohio courts. Petitioner presented his Fourth Amendment claim to the trial court by way of a suppression motion. (*See* Doc. 10, Ex. 4). He also challenged the trial court's denial of his motion to suppress on direct appeal to the Ohio Court of Appeals and the Supreme Court of Ohio.

Before ruling on petitioner's suppression motion, the trial court held a hearing on November 14, 2001 where the State presented, and defense counsel had the opportunity to cross-examine, witnesses; the parties also were given an opportunity to file post-hearing briefs. (Doc. 10, Exs. 5, 25). The trial court issued a written order detailing its reasons for overruling petitioner's motion to suppress. (*Id.,* Ex. 5). Specifically, the court found that probable cause existed for the State Highway Patrol officer to stop petitioner's vehicle for an inoperable headlight and to detain petitioner without a warrant until Detective Weyand from Clinton County arrived at the scene, based on information he had received from a radio dispatch officer confirming that the "operator of the vehicle was wanted in neighboring Clinton County . . . as a suspect for a serious criminal offense." (*Id.*).

The court further rejected petitioner's argument that Detective Weyand, "as a municipal police officer, lacked authority to apprehend [petitioner] outside the city of Wilmington, Ohio and to transport [petitioner] across county lines back to Clinton County." (*Id.*). Although the court found that statutory procedures may not have been followed with respect to petitioner's arrest and return to Clinton County, the violation, which was technical in nature, did not amount to error of constitutional magnitude. (*Id.*).

Petitioner was permitted to challenge the trial court's ruling on direct appeal, where he argued that the State had "failed to meet its burden of proving that the officer who issued the dispatch had a reasonable basis on which to suspect [petitioner] of an offense." (*See id.,* Exs. 10, 13). The Ohio Court of Appeals

13

rejected this argument, finding that the tip provided by the rape victim to the dispatch officer identifying petitioner, his car and his residence was sufficiently reliable and credible to establish a "reasonable suspicion" that petitioner had committed the offense. (*Id.,* Ex. 12, pp. 6-7). Moreover, the Supreme Court of Ohio declined jurisdiction to hear the case, apparently because it was not persuaded by petitioner's memorandum in support of jurisdiction that the claim merited further consideration. (*Id.,* Ex. 15).

Under 28 U.S.C. § 2254(e)(1), "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."

This Court has reviewed the transcript of the suppression hearing, as well as the state trial court's decision denying the suppression motion and the Ohio Court of Appeals' decision affirming the trial court's judgment. (*See* Doc. 10, Exs. 5, 12, 25). Upon such review, there is sufficient evidence in the record, which has not been rebutted by "clear and convincing evidence" to the contrary, to support the state courts' findings that in the absence of a warrant, probable cause existed for petitioner's stop, detention and subsequent arrest, and that although the arresting officer may have violated state statutory procedures in the arrest and transportation of petitioner from Highland County to Clinton County, such error under state law did not amount to a Fourth Amendment violation. (*See id.,* Ex. 19, Vol. I–Tr. 80, 89-93, 102; Vol. II–Tr. 15, 17-18).

Accordingly, in sum, the Court concludes that the Supreme Court's *Stone* decision prohibits the re-litigation of petitioner's Fourth Amendment claim alleged in Grounds One and Two of the petition, which petitioner had the opportunity to fully and fairly litigate in the state courts.

### C.  Petitioner Is Not Entitled To Relief Based On The Fifth Amendment Claim Alleged In Ground Three Challenging The Denial Of His Motion To Suppress Statements Made By Him During His Custodial Interrogation

In Ground Three of the petition, petitioner alleges that the trial court committed constitutional error when it overruled his motion to suppress statements

14

made by him during his custodial interrogation, which statements he claims were "coerced" in violation of the Fifth Amendment.  (Doc. 1, "Computer Generated Petition, p. 10).

In his motion to suppress filed with the trial court, petitioner argued that his statements were "not voluntary" because "[a]t no time was [he] advised of his *Miranda* rights" and because "law enforcement officers led [him] to believe that he had no choice but to answer all questions during the interrogation."  (Doc. 10, Ex. 2).  The trial court held a hearing on this motion on October 31, 2001, where Detective Weyand was called to testify for the State and was subjected to cross-examination by defense counsel.  (Doc. 18, October 31, 2001 Tr.).

After hearing Detective Weyand's testimony, the trial court overruled petitioner's suppression motion from the bench.  (*See id.*).  The court also issued a written decision, which provided in pertinent part:

> In his memorandum, defendant alleges that no *Miranda* warnings were provided defendant.  At hearing, Detective Duane Weyand of the Wilmington, Ohio police department testified that *Miranda* warnings were provided defendant on two, separate occasions.  First, while being transported from Hillsboro, Ohio to Wilmington, Ohio by Detective Weyand, the Detective testified that he orally advised defendant of his *Miranda* rights by reading them from a standard card he uses in his work.  Detective Weyand read the form for the record.  Second, Detective Weyand provided defendant a second set of *Miranda* warnings, this time in writing, at the Wilmington Police Station.

> There are no facts whatsoever suggesting the Detective Weyand was coercive or that the time and setting of the interrogation was so coercive as to overcome the will of the defendant to answer questions about his involvement in the criminal investigation.  There is nothing in the record suggesting that the statements provided by Mr. Carter to Detective Weyand were involuntary or produced as a result of a violation of his constitutional rights.

(Doc. 10, Ex. 3).

15

On direct appeal, petitioner conceded that he had been advised of his *Miranda* rights prior to his interrogation.  (*See id.,* Ex. 10, p. 5).  He instead contended that his statements were involuntary because they were "based on the officer's promises that were untrue."  (*Id.*).  In support of this argument, petitioner alleged that Detective Weyand "lied to [him] about the severity of the charges he faced and the sentence he would receive" by "downplay[ing] the seriousness of what the sexual assault charge might be;" by "not even intimat[ing] that [he] might be charged with other, just as serious, offenses;" and by telling him "that he was looking at a ten year sentence at most."  (*Id.,* pp. 7-8).

The Ohio Court of Appeals overruled petitioner's assignment of error, reasoning in pertinent part as follows:

> Absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct, a suspect's decision to waive his Fifth Amendment privilege against self-incrimination is made voluntarily. . . .  The voluntary nature of a defendant's statement is determined from the totality of circumstances. . . .  A confession is involuntary if, under the totality of the circumstances, the defendant's will was overborne by the circumstances surrounding his giving of the confession. . . .
>
> The totality-of-the-circumstances test takes into consideration both the characteristics of the accused and the details of the interrogation. . . . Factors to be considered include the age, mentality and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.
>
> In the present case the officers did not deceive appellant.  Appellant in fact did receive a ten-year sentence for the rape charge.  There is no evidence that appellant's will was overborne and that his capacity for self-determination was critically impaired because of coercive police conduct.  Appellant is 55 years of age.  Det. Weyand asked appellant if he had been drinking and appellant stated that he had not.  There are no facts suggesting Det. Weyand was coercive or that the time and setting of the interrogation was coercive.  Furthermore, given the fact that appellant was informed that he could be charged with a serious crime,

16

it is unlikely that the detective's failure to tell him that he could be charged with another related crime induced him to offer a statement....

Considering the totality of the circumstances, we find appellant's confession was voluntarily obtained.

(*Id.,* Ex. 12, pp. 4-6) (state case citations omitted).

Under the applicable standard of review set forth in 28 U.S.C. § 2254(d), petitioner is not entitled to relief in this federal habeas corpus proceeding unless the state court's adjudication of his constitutional claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942.

An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must

17

also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

The Fifth Amendment prohibits the use of a defendant's compelled testimony by the prosecution in its case in chief. *Oregon v. Elstad,* 470 U.S. 298, 306-07 (1985). The Due Process Clause of the Fourteenth Amendment also prohibits the admission of coerced confessions procured by means "so offensive to a civilized system of justice that they must be condemned." *Miller v. Fenton,* 474 U.S. 104, 109 (1985). A confession is "coerced" where the conduct of law enforcement officials was such as to overbear the accused's will to resist, thus bringing about a confession not freely self-determined. *Beckwith v. United States,* 425 U.S. 341, 347-48 (1976) (quoting *Rogers v. Richmond,* 365 U.S. 534, 544 (1961)). The ultimate question in coerced confession cases is whether the confession was voluntary, or in other words, "the product of an essentially free and unconstrained choice by its maker." *Schneckloth v. Bustamante,* 412 U.S. 218, 225 (1973).

An involuntary confession may result from psychological as well as physical coercion on the part of law enforcement officials. *Arizona v. Fulminante,* 499 U.S. 279, 287-88 (1991); *Miranda v. Arizona,* 384 U.S. 436, 448 (1966). The limits on police conduct in cases involving claims of psychological coercion during interrogation will depend upon a weighing of the circumstances of pressure against the power of the confessor's resistance. *Stein v. New York,* 346 U.S. 156, 184-85 (1953).

The standard for determining the voluntariness of a confession that a petitioner claims was psychologically coerced is not a "but-for" test -- i.e., whether the confession would have been made in the absence of the interrogation. Under the "but for" test, virtually no confession would be considered voluntary, because few people give incriminating statements purely of their own accord without any

questioning at all.  *Schneckloth,* 412 U.S. at 224.  Rather, the court must consider the effect the totality of the circumstances had upon the will of the accused.  This approach requires the reviewing court to examine the conduct of the police in eliciting the confession, the characteristics of the accused as bearing on his capacity to resist police pressure, and the details of the interrogation. *Id.* at 226; *see also Mincey v. Arizona,* 437 U.S. 385, 398-402 (1978).

In order to demonstrate that a confession is involuntary, it must be shown from the totality of circumstances that the challenged police activity was objectively coercive; such coercion was sufficient to overbear the suspect's will; and the suspect's will was in fact overborne as a result of the coercive police activity. *United States v. LeBlanc,* 45 Fed.Appx. 393, 397 (6th Cir. Aug. 28, 2002) (not published in Federal Reporter) (citing *United States v. Rigsby,* 943 F.2d 631, 635 (6th Cir. 1991), *cert. denied,* 503 U.S. 908 (1992)); *see also Colorado v. Connelly,* 479 U.S. 157, 164-67 (1986).

Factors to consider in assessing the totality of circumstances include the police "coercion" that was involved in the interrogation; the age, education, and mental and emotional condition of the accused; whether the accused was advised of his *Miranda* rights; the location and time of the interrogation; and the length, intensity  and continuity of the questioning.  *Schneckloth,* 412 U.S. at 226; *see also United States v. Wiley,* 132 Fed.Appx. 635, 638 (6th Cir. May 26, 2005) (not published in Federal Reporter) (citing *Withrow v. Williams,* 507 U.S. 680, 693-94 (1993)), *cert. denied,* 126 S.Ct. 592, 595 (2005).

In this case, the Ohio Court of Appeals was the last state court to render a reasoned decision addressing petitioner's Fifth Amendment claim.  Although the court cited only Ohio cases in support of its decision, it correctly identified and applied the totality-of-circumstances standard of review that was well-established by the Supreme Court in the precedents discussed above, *see supra* pp. 18-19.

In assessing the totality of the circumstances, the Ohio Court of Appeals found that the challenged police conduct was not coercive; that there was no evidence suggesting that the time or setting of petitioner's interrogation was suspect or that petitioner's capacity for self-determination was impaired; and that it was unlikely that petitioner, who was informed he could be charged with a serious crime, was induced to offer a statement based on the failure of the police to also inform him that he might be charged for other additional offenses. (*See* Doc. 10,

Ex. 12, pp. 5-6).  Upon review of the suppression hearing transcript, this Court agrees with the Ohio court's determination.

At the suppression hearing, Detective Weyand testified that he informed petitioner of his *Miranda* rights as he was driving him to the Clinton County police station, and told petitioner that he "want[ed] to get [petitioner's] version of what happened."  (Doc. 18, October 32, 2001 Suppression Hearing Tr. 9-10).  Petitioner indicated he "had no problem with that" and that he wanted to give a statement because "there's no sense in hiding this, or keeping this from you."  (*Id.,* Tr. 10; *see also id.,* Tr. 41-42).  Petitioner then proceeded to make statements to Weyand in a "conversation" that lasted the "whole trip" to the police station.  (*See id.,* Tr. 10-12).

Upon arrival at the police station, petitioner was taken to an interview room after booking, where he was questioned again.  (*Id.,* Tr. 13).  Before questioning commenced, Detective Weyand went over a written form with petitioner advising petitioner a second time of his *Miranda* rights.  (*Id.,* Tr. 13-15).  Petitioner executed the form waiving those rights aware that he was going to be questioned about a "rape," which he acknowledged is a "pretty substantial, pretty serious" charge.  (*Id.,* Tr. 15-16).  After petitioner consented to speak to Detective Weyand, he made statements responsive to the detective's questions in a videotaped interview that lasted 36 minutes.  (*See id.,* Tr. 16-18, 47).

On cross-examination, defense counsel pointed out that at one point in the interview, petitioner asked if rape was "what the charge is going to be," and Detective Weyand responded as follows: "I don't know if that's what the charge is going to be because it's under rape because it's going to be sex without her consent; I mean, it sounds probably worse than it is, but it's that or even sexual battery."  (*Id.,* Tr. 21).  Detective Weyand testified further, however, that he did not mean to "downplay anything" with petitioner with respect to possible charges because he "never had any problems" in getting petitioner to talk.  (*Id.*).

Detective Weyand later testified on cross-examination that when he was finger-printing petitioner, he "made it clear" to petitioner that "he could get up to ten years for something like this."  (*Id.,* Tr. 48).  Weyand stated that he was "pretty sure" he made this statement to petitioner after the interview, and that he never said anything to petitioner "to the effect of how his cooperation would be in his best interest and that this will help him when he comes to Court."  (*Id.,* Tr. 48-50).

Finally, the suppression hearing transcript reflects that petitioner received an education through two years of college and was in the military for 29 years. (*Id.,* Tr. 12, 14). Detective Weyand testified that during his conversations with petitioner, petitioner appeared "calm" and "relaxed" and stated that he had not been drinking. (*Id.*, Tr. 12, 30). Weyand further noted that during his conversations with petitioner, petitioner stayed with the topic and did not "drift off," and that petitioner was "articulate" and "concise" in his responses to questions. (*Id.,* Tr. 30-31, 39). Petitioner also was not in handcuffs during his interview at the police station. (*Id.,* Tr. 42).

In light of this record evidence, it was reasonable for the Ohio Court of Appeals to find that Detective Weyand did not engage in coercive activity in questioning petitioner either during the car drive to the police station or in the videotaped interview at the station. Although a promise of leniency is a relevant factor and, depending on the totality of the circumstances, may render a confession involuntary, *see Wiley,* 132 Fed.Appx. at 640, there is no evidence in the record to suggest that Detective Weyand made any such promise to petitioner. Indeed, it is apparent from the record that Detective Weyand did not deceive petitioner in any way about the charges and penalties he faced. Given the sparse information Detective Weyand had received about the incident, at the time of his conversations with petitioner, Detective Weyand only knew that petitioner could be charged with rape or other sex offense, which carried a penalty of up to ten years in prison, and he so informed petitioner of those facts.

It was also reasonable for the Ohio Court of Appeals to conclude from the totality of circumstances that petitioner's confession was voluntarily obtained. Petitioner was informed on two separate occasions of his *Miranda* rights. His interview at the police station, which was videotaped, lasted only 36 minutes. As the Ohio Court of Appeals reasonably found, there is no evidence in the record indicating that the setting and time of petitioner's interrogation was suspect or that petitioner was especially susceptible to any coercion on Detective Weyand's part. The record reflects that petitioner was an educated, articulate adult, who appeared calm and relaxed with the ability to remain focused on the topic under discussion. To the extent petitioner could have interpreted Detective Weyand's statements about the possible charges and penalties he faced as "downplaying" the matter, it is clear from the record that he was well aware of the seriousness of the possible rape charge. Therefore, as the Ohio Court of Appeals reasonably found, it is highly unlikely that petitioner's will was overborne by any failure to inform him that he

21

could face other additional criminal charges, which carried additional penalties.

Accordingly, in sum, the Court concludes that the Ohio Court of Appeals' adjudication of petitioner's Fifth Amendment claim neither is contrary to nor involves an unreasonable application of clearly-established Supreme Court precedents, and is not based on an unreasonable determination of the facts. Therefore, petitioner is not entitled to habeas relief based on the claim alleged in Ground Three of the petition that his statements to the police were "coerced" and should have been suppressed by the trial court.

## D. Petitioner Is Not Entitled To Relief Based On His Double Jeopardy Claim Alleged In Ground Seven Challenging His Rape And Kidnapping Convictions

In Ground Seven of the petition, petitioner alleges that, in violation of the Fifth Amendment's Double Jeopardy Clause, the trial court imposed consecutive sentences for the rape and kidnapping offenses, which instead should have been merged because they constitute "allied offenses of similar import."  (Doc. 1, "Computer Generated Petition, pp. 18-19).

Petitioner presented this claim as an assignment of error on direct appeal. The Ohio Court of Appeals was the last state court to render a reasoned decision addressing the merits of the claim.[3]  Without addressing the federal constitutional issue, the court determined that the two offenses were not allied offenses of similar import under Ohio law, because they were committed with a "separate animus." (Doc. 10, Ex. 12, pp. 11-13).  In so ruling, the court made findings of fact, which are presumed correct, *see supra* p. 3 n.2, and reasoned in relevant part as follows:

> The determination of whether two offenses consist of allied offenses of similar import turns on examination of the statutorily defined elements of the two offenses. . . .  The offense of forcible rape is defined in R.C.

---

[3] The claim was also raised to the trial court at the sentencing hearing.  (*See* Doc. 18, February 19, 2002 Hearing Tr.).  The court found that petitioner's use of handcuffs to restrain the victim "was not merely incidental . . . to the underlying crime of rape" and created a "substantial increase in the likelihood of harm" to her, which justified petitioner's conviction and sentence for both kidnapping and rape as separate offenses of "dissimilar import."  (*Id.,* Tr. 59-60).

22

2907.02(A)(2): "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

The pertinent portion of the kidnapping statute is R.C. 2905.01(A)(4): "(A) No person, by force, threat, or deception, *** shall *** restrain the liberty of the other person, for any of the following purposes: (4) to engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will."

The restraint inherent in any threat or use of force generally makes any rape under R.C. 2907.02(A)(2) meet the elements of kidnapping under the restraint element of R.C. 2905.01(A)(4). In addition, the restraint element of rape may also meet the definition of kidnapping under R.C. 2905.01(A)(2), since it facilitates the commission of a felony. The indictment alleging kidnapping in the present case used the language from both these subdivisions in setting forth the elements of the crime.

The question of whether kidnapping and rape will be considered to have been committed separately or with a common animus was addressed in the syllabus of *State v. Logan* (1979), 60 Ohio St.2d 126: "In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), the court adopts the following guidelines:

> "Where the restraint *** of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, *** there exists a separate animus as to each offense sufficient to support separate convictions;

> "Where the *** restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions."

23

In the present case, we find that there was evidence of a separate animus sufficient to support independent convictions and sentencing on both kidnapping and rape. It is clear in this case that the restraint of K.S. subjected her to a substantial increase and risk of harm separate and apart from the underlying crime of rape. K.S. was bound with handcuffs, which not only facilitated the rape, but also must have substantially increased the danger of asphyxiation since she was hindered from moving her arms and hands to remove first the latex glove and then the sock which appellant placed in her mouth before taping it shut. We therefore find that the trial court did not err in finding that a separate animus existed for the crimes of kidnapping and rape in this case, and independent sentences on the two crimes were appropriate.

(*Id.*).

The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Constit. amend. V. The Double Jeopardy Clause, made applicable to the states through the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 794 (1969), among other things, protects against "multiple punishments for the same offense" imposed in a single proceeding. *Missouri v. Hunter,* 459 U.S. 359, 366 (1983) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)). In the "multiple punishment" context, the protection is limited to ensuring that "sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Jones v. Thomas,* 491 U.S. 376, 381 (1989); *see also Ohio v. Johnson,* 467 U.S. 493, 499 (1984); *Brown v. Ohio,* 432 U.S. 161, 165 (1977). Therefore, "the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Johnson,* 467 U.S. at 499.

In the federal courts, the test established in *Blockburger v. United States,* 284 U.S. 299, 304 (1932), is normally used to determine whether two offenses are sufficiently different to allow the imposition of cumulative punishment. *Johnson,* 467 U.S. at 499 n.8; *see also Brown,* 432 U.S. at 166. However, the *Blockburger* test, a rule of statutory construction for federal statutes, does not necessarily control the inquiry into the intent of a state legislature. *Johnson,* 467 U.S. at 499 n.8; *Banner v. Davis,* 886 F.2d 777, 780-82 (6th Cir. 1989). Instead, when assessing the

intent of a state legislature, the federal courts must defer to and are bound by the state courts' construction of their own statutes. *Hunter,* 459 U.S. at 368 (citing *O'Brien v. Skinner,* 414 U.S. 524, 531 (1974)); *see also Johnson,* 467 U.S. at 499; *Brown,* 432 U.S. at 167; *Banner,* 886 F.2d at 780. "Even if the crimes are the same under *Blockburger,* if it is evident that a state legislature intended to authorize cumulative punishments [for them, the federal] court's inquiry is at an end." *Johnson,* 467 U.S. at 499 n.8.[4]

As the Ohio Court of Appeals patently understood in ruling on petitioner's claim on direct appeal, the Ohio legislature's intent in the multiple punishment area may be discerned from the state multiple-count statute, Ohio Rev. Code § 2941.25. *See State v. Rance,* 710 N.E.2d 699, 635 (Ohio 1999).[5]  The statute provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

The Supreme Court of Ohio has held that this provision permits the trial court to convict and impose cumulative sentences for two or more offenses arising from

---

[4] *See also Hunter,* 459 U.S. at 368-69 ("Where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial" without violating the Double Jeopardy Clause.); *Banner,* 886 F.2d at 780-82.

[5] *See also Jones v. Baker,* 35 F.3d 566 (table), Nos. 93-3589, 93-3625, 1994 WL 464191, at **3 (6th Cir. Aug. 26, 1994) (unpublished), *cert. denied,* 513 U.S. 1164 (1995); *Woodfork v. Russell,* 19 F.3d 20 (table), No. 92-4301, 1994 WL 56933 (6th Cir. Feb. 24, 1994) (unpublished).

the same incident if the offenses (1) are of dissimilar import; or (2) are of similar import, but were committed separately or with separate animus. *Rance,* 710 N.E.2d at 636.

The applicable test for deciding the issue potentially involves a two-step analysis under the state statute.

First, if the statutory elements of the various crimes, considered "in the abstract" without regard to the particular facts of the case, are found to be of dissimilar import because they do not "correspond to such a degree that the commission of one crime will result in the commission of the other," the multiple convictions and punishments are permitted and the court's inquiry ends. *Id.*

Second, if the offenses are found to be of similar import, the second level of inquiry is triggered requiring the court to determine whether or not the defendant may be cumulatively punished for them because, as a factual matter, they were committed separately or with a separate animus. *See id.; see also State v. Jones,* 676 N.E.2d 80, 81-82 (Ohio 1997). This determination does not turn on "the presence or absence of any specific factors," but rather is based on the particular facts of each case as gleaned from the record. *Jones,* 676 N.E.2d at 81-82.

Here, it appears that the Ohio Court of Appeals properly engaged in this two-step inquiry in adjudicating the merits of petitioner's double jeopardy claim, implicitly concluding that the rape and kidnapping counts charged against petitioner are allied offenses of similar import when viewed in the abstract and that multiple punishments could nevertheless be imposed because the offenses were committed with a "separate animus."

As discussed above, *see supra* p. 25, this federal court is bound by the Ohio court's interpretation of the state criminal statutes as showing that the kidnapping and rape crimes are allied offenses of similar import when viewed in the abstract. *Accord State v. Logan,* 397 N.E.2d 1345, 1347-48 (Ohio 1979) (citing *State v. Donald,* 386 N.E.2d 1341 (Ohio 1979)).

Therefore, the only remaining issue is whether the trial court's determination, upheld on direct appeal, that the two charged offenses were separate acts for which cumulative punishments could be imposed, amounted to a violation of the Double Jeopardy Clause as a factual matter.

26

The Supreme Court has cautioned that the "Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units." *Brown,* 432 U.S. at 169.  Conversely, however, as the Ohio Court of Appeals understood, Ohio Rev. Code § 2941.25(B) carves an exception to Ohio Rev. Code § 2941.25(A), allowing for the imposition of cumulative punishments for criminal offenses that are neither spatially nor temporally distinct, so long as they carried out with a separate animus.  *See Logan,* 397 N.E.2d at 1348.[6]

In *Logan,* which also involved convictions for both rape and kidnapping, the Supreme Court of Ohio held that the determination whether the kidnapping offense constitutes a separate criminal act committed with a "separate animus," turns on (1) whether "the restraint or movement of the victim is merely incidental to [the] separate underlying crime, or instead has a significance independent of the other offense;" and ( 2) if merely incidental, whether "the victim, by such limited asportation or restraint, was subjected to a substantial increase in the risk of harm separate from that involved in the underlying crime."  *Id.* at 1351-52.

Applying this standard, the Ohio Court of Appeals reasonably determined in this case that petitioner could be separately convicted and sentenced for the kidnapping, because his use of handcuffs to restrain the victim for the purpose of committing the underlying rape offense subjected the victim to a "substantial increase [in] risk of harm separate and apart from the underlying crime of rape." (Doc. 10, Ex. 12, p. 13).  As the state court reasoned, the handcuffs not only facilitated the victim's rape, but also substantially increased the risk of her dying by asphyxiation "since she was hindered from moving her arms and hands to remove first the latex glove and then the sock which [petitioner] placed in her mouth before taping it shut."  (*Id.*).

Accordingly, this Court concludes that "based on the particular facts . . . gleaned from the record" in this case, petitioner could be separately convicted and sentenced for both rape and kidnapping under Ohio's multiple count statute, Ohio Rev. Code § 2941.25, without violating the Double Jeopardy Clause's provision prohibiting "multiple punishments for the same offense."  Therefore, petitioner is

---

[6]  ("Even though there might be a shield initially provided a defendant under R.C. 2941.25(A) where charged with multiple counts, he still must overcome the hurdle of R.C. 2941.25(B)[, which] in essence, provides that notwithstanding the fact that a defendant is charged with two or more offenses of the same or similar kind, he may be convicted of all of them if he committed them separately, or if he possessed a separate 'animus' as to each.").

not entitled to federal habeas relief based on his claim alleged in Ground Seven challenging the consecutive sentences that were imposed in this case.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2.  A certificate of appealability should not issue with respect to the claims alleged in Grounds Four through Six and Eight through Eleven of the petition, which this Court has concluded are waived and thus barred from review on procedural grounds, because "jurists of reason would not find it debatable as to whether this Court is correct in its procedural ruling" under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).[7]  A certificate of appealability also should not issue with respect to the claims alleged in Grounds One through Three and Seven of the petition, which were addressed on the merits by this Court, because petitioner has failed to make a substantial showing in those grounds for relief of the denial of a constitutional right that is remediable in this federal habeas proceeding.[8]  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore DENY petitioner leave to appeal *in forma pauperis*

---

[7]  Because this Court finds that the first prong of the *Slack* standard has not been met, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in Grounds Four through Six and Eight through Eleven of the petition.  *See Slack*, 529 U.S. at 484.

[8]  Because this Court's adjudication of the claims alleged in Grounds One through Three and Seven of the petition do not involve the denial or dismissal of such claims on procedural grounds, the two-part test enunciated in *Slack*, 529 U.S. at 484-85, for determining whether or not to issue a certificate of appealability for procedurally defaulted claims, is inapplicable.

28

upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date:  4/3/06                                   s/Timothy S. Black
     cbc                              Timothy S. Black
                                        United States Magistrate Judge

J:\BRYANCC\2006 habeas orders\03-901denypet.waiv-4thA-Miranda-DJmerger.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Charles William Carter,
     Petitioner,

                                         Case No. 1:03cv901

           v.                             (Dlott, J.; Black, M.J.)

Michael Sheets,
     Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action.  Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.  Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474  U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).